[No. 3532.    Decided February 21, 1901.]

MAGGIE FRENCH *et al., Respondents,* v. FIRST AVENUE· RAILWAY COMPANY, *Appellant.*

MASTER AND SERVANT — ASSUMPTION OF RISKS.

Where an engineer in charge of the operation of the power house of a cable railway was killed by falling into the winder wheel while oiling the bearings, the facts that there were no guard rails around the wheel, that the butment on top of which he was compelled to walk in that work had a defective place in it rendering the surface uneven, and that the part of the house where the wheel was located was so insufficiently lighted that he was compelled to carry a candle while oiling, would not warrant a recovery by his family against the company, when the condition of the place was open and apparent, and the engineer had accepted the employment after full examination thereof, and had continued in the employment with knowledge of its unsafe character.

Appeal from Superior Court, King County.—Hon. E. D. BENSON, Judge. Reversed.

*Struve, Allen, Hughes & McMicken,* for appellant.

*Brady & Gay,* for respondents:

The law is that the servant assumes only the *ordinary* risks pertaining to his employment, and that he has a right to assume that the master took proper care not to subject him to unreasonable risks or dangers. *Pittsburgh, C. & St. L. Ry. Co. v. Adams,* 5 N. E. 187; *Ryan v. Fowler,* 24 N. Y. 411 (82 Am. Dec. 315); *Mayhew v. Sullivan Mining Co.,* 76 Me. 100; *Buzzell v. Laconia Mfg. Co.,* 48 Me. 113 (77 Am. Dec. 212); *Rhodes v. Varney,* 39 Atl. 552; *McGee v. Boston Cordage Co.,* 1 N. E. 745; *Sieber v. Great Northern Ry. Co.,* 79 N. W. 95; *Wheeler v. Wason Mfg. Co.,* 135 Mass. 294; *Wible v. Burlington, C. R. & N. Ry. Co.,* 80 N. W. 679; *King v. Chicago & N. W. Ry. Co.,* 78 N. W. 837; *Grand Trunk Ry. Co. v. Ives,* 144 U. S. 408 (36 L. ed. 485); *Johnson v. Bellingham Bay Imp. Co.,* 13 Wash. 455; *McDonough v. Great Northern Ry. Co.,* 15 Wash. 244; *Ogle v. Jones,* 16 Wash. 319.

The opinion of the court was delivered by

DUNBAR, J.—This action was brought by the widow and children of Walter H. French, deceased, who was killed while in the employment of the appellant, the First Avenue Railway Company. The complaint alleges the employment by the defendant as an engineer in its power house; that the said French was required to work in an unsafe place; that the defendant had negligently and carelessly allowed the platform around the winder wheels in its power house to remain unfinished, open, and ex-

posed, and without any protection, and without light or signal to indicate danger; that it had failed to provide rails or guards of any kind around the wheels; that it failed to provide proper light where the said French was required to work, and had failed to provide said French with any lamp for use in the prosecution of his work. It is alleged that all of these defects, omissions, and neglects, which were the principal defects, omissions, and neglects pleaded, were known to the defendant and unknown to the said French; that, while engaged in the performance of his duties as engineer, and unaware of danger, and without any fault or neglect on his part, and on account of the negligence of the defendant, the said French slipped, fell, and was thrown into the winder wheel in the said engine room and received the injuries from which he died. Upon the trial of the cause the jury rendered a verdict in favor of the plaintiffs for $10,000. Judgment was entered and appeal taken to this court. At the close of plaintiffs' testimony the appellant challenged the sufficiency of the proof, and moved the court that the cause be taken from the jury and for judgment for the defense, which motion was overruled.

We have carefully examined the testimony of the plaintiffs in this case, and from such examination, without considering the testimony of the defense, we are of the opinion that the motion should have prevailed. The law in relation to the liability of employers and the duty of the employee has been so often announced at length by this court that it would serve no good purpose to go into an extended investigation of that subject now. It was held in the case of *Hoffman v. American Foundry Co.,* 18 Wash. 287 (51 Pac. 385), that the duty of the master to furnish the servant reasonably safe tools, machinery, and appliances with which to work, and the

duty of the servant to exercise due care to avoid injury, are reciprocal obligations, and the duty of each is measured by the standard of ordinary care. And this is the universal rule. In consonance with this rule, we also held, in Olson v. McMurray Cedar Lumber Co., 9 Wash. 500 (37 Pac. 679), that a person employed to work about dangerous machinery assumes the risk of all apparent danger, and cannot recover for injuries received, although his employer has not instructed him as to his duties around the machiney and the danger of his employment. The doctrine that the servant assumes the risk of apparent danger is as well established as the doctrine that it is the duty of the master to furnish the servant with a safe place to work in and with safe appliances and machinery. It certainly is the duty of the engineer to observe, examine, and understand the machinery which he is operating. It is placed under his especial custody and control, and he must necessarily know more about it than the master. He is employed on the presumption that he does have this particular and certain knowledge.

But it is contended by the respondents that the engineer in this case was newly employed, and had not had sufficient time to acquaint himself with the defects in the machinery. The testimony shows,—at least, the testimony of the plaintiffs,—that it was about five feet and a half from the platform to the place where the bearings had to be oiled; that there was a ladder upon which the engineer ascended to a platform between the winder wheels, and that the place or space which he had to traverse in order to reach the oil cups to oil the machinery was somewhat defective; that there were no guards or rails to keep a person from falling if he lost his balance; that it was not walled up entirely to the wheels; that in one place the cement had fallen off from a space about

four inches wide by twelve inches long; and that the light
was not sufficiently powerful to illuminate the path or
way which the engineer had to travel.   The testimony of
Mr. French, before he died,—and he said very little on
the subject,—was that he was oiling the bearings, fell into
the winder wheel, and was thrown out onto the floor.   It
seems that when he went up to oil the machinery he took
a candle with him to light him on his way.   The testi-
mony shows that he had been notified, on Sunday before
commencing work, by the superintendent, that the ma-
chinery was not in as good condition as in some other
shops in which French had worked, but the superin-
tendent stated that they hoped soon to have those matters
corrected, and that they would have them in a week or so.
It appears, also, that French on that Sunday afternoon,
after talking with the superintendent, went over to take
a view of the power house and the machinery; that he
came back while the superintendent was there and the
superintendent said to him, "Well, I guess you didn't
find things so nice up there," comparing the power house
and machinery with other places about which French
had been telling him.   It also appears that he went up
again about midnight to see them close down.   In addi-
tion to this, he had charge of the power house for two
days before he was hurt, the accident having occurred about
eight o'clock in the evening.   The testimony of plaintiff's
witnesses was to the effect that it was the duty of the engi-
neer to oil these bearings, and that they had to be oiled
very frequently.   So that it appears, without any contra-
diction, that the engineer was familiar with the alleged
defects in this machinery.   There were no hidden defects
in the machinery.   There was no danger there that was
not apparent to an observing man.   If there was not suffi-
cient light the engineer knew it.   If the platform on

which he had to walk was in a bad condition, he knew that, for he must have traversed it before the time at which the accident accurred. So that, conceding the truthfulness of the testimony, and all of the testimony of plaintiffs, it appears that the danger, if there was any, was apparent; that the engineer was cognizant of the defects which existed, and consequently, under the well-established rule that the servant assumes the risk of apparent danger,—a rule which is augmented in this case by the fact that the machinery in question was under the personal supervision of the person injured,—no recovery can be had.

The judgment is reversed, and the cause remanded with instructions to the lower court to dismiss the cause.

REAVIS, C. J., and FULLERTON and ANDERS, JJ., concur.