[No. 7599. Decided January 5, 1909.]

E. MESHISHNEK, *Respondent*, v. SEATTLE SAND & GRAVEL COMPANY, *Appellant.*[1]

MASTER AND SERVANT—PLEADING—ISSUES AND PROOF—ASSUMPTION OF RISKS—KNOWLEDGE OF DEFECT—PROMISE TO REPAIR. An action for personal injuries sustained by reason of a defective gasoline engine, which the master had promised to repair, does not fail upon withdrawal of issues relating to the promise, where it is alleged and shown that defendant did not know of the danger, although he did know of the defect, and that the defect was the proximate cause of the injury, and the defect was not so serious that the engine could not be used with care.

SAME—DEFECTIVE MACHINERY—ASSUMPTION OF RISKS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. In an action for injuries sustained by an operator of a gasoline engine, the plaintiff's assumption of risks and contributory negligence are for the jury, where it appears that plaintiff was employed to operate a steam engine, but at defendant's request undertook to operate a gasoline engine with which he had no experience and which was defective, that he operated it five or six weeks, starting it in the way he was instructed to do, whereby a spark set fire to oil that had been spilled by another employee without plaintiff's knowledge, causing an explosion of gasoline near an exhaust pipe, the plaintiff testifying that he knew of the defects in the engine but did not know of the danger.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered April 27, 1908, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by the operator of a gasoline engine. Affirmed.

*Hayden & Langhorne* and *A. R. Warren*, for appellant.
*W. G. Heinly* and *E. D. Hodge*, for respondent.

MOUNT, J.—Action for personal injuries. This cause was tried to a jury, and resulted in a verdict in favor of the plaintiff in the sum of $2,915. The defendant appeals.

[1]Reported in 99 Pac. 9.

The facts are substantially as follows: The respondent was employed by the appellant to operate a steam engine used by appellant. Some five or six weeks prior to the injury, respondent was requested to operate a gasoline engine in use by appellant. Respondent knew nothing about gasoline engines, or how to start or run them. Appellant's foreman told him and showed him how the engine was started and operated. Thereafter the respondent operated this gasoline engine, in the way he was instructed, to the time of his injury. The engine was out of repair in several particulars, one of which was that the aperture in the prime plug was filled up so that the plug had to be removed before the engine could be primed, when it was desired to start it.

On the day before the accident, appellant's foreman attempted to repair the engine, but without success. In some way at that time oil was spilled over the engine and upon the ground, and respondent went to work that evening and attempted to start the engine in the way he had been instructed to do, viz., by removing the prime plug, squirting oil into the cylinder head, and bringing the electric wires in contact across the hole in the cylinder head from which the prime plug had been removed. When he did this, the spark thus secured set fire to the gasoline which was on the face of the engine, which fire was communicated along the ground to a can of gasoline kept under the exhaust pipe, which can of gasoline was thereby exploded and caused the injuries complained of. Respondent did not know about the oil which was spilled as above stated. The complaint alleged that the machinery and appliances furnished by appellant to respondent were defective and out of repair. The defects were described, and then it was alleged further:

"That the plaintiff, believing that the danger attached to the running of said engine was not so imminent and immediate but what he could reasonably operate the same for a reasonable length of time without danger to himself, and knowing the engine was being run during the day under like con-

ditions by ordinarily prudent men, and under the promise of the foreman of said defendant, given to the plaintiff within two days prior to said accident, that the same would be repaired, and with the expectation that it would be repaired within a short time, the plaintiff went to work, and at the time of the accident before mentioned said engine had not been so repaired. That the plaintiff's injuries hereinbefore alleged were occasioned by the negligence of the defendant, without any negligence whatever on the part of the plaintiff, and by reason of the failure of the defendant to furnish safe, suitable, and proper machinery and appliances for the work which plaintiff was directed and ordered by the defendant to do, and by reason of the defendant's failure to remedy the defects in said machinery as aforesaid."

At the close of the respondent's evidence, the court, upon motion of appellant, withdrew from the consideration of the jury all questions of negligence based upon the alleged promise to repair, but denied appellant's motion for a nonsuit upon the ground of assumed risk and contributory negligence. At the close of all the evidence in the case, appellant renewed its motion for nonsuit and directed verdict. This motion was denied. The rulings of the trial court upon these motions constitute the only errors assigned upon this appeal.

The appellant bases his argument for reversal upon the fact that the complaint is predicated upon a promise to repair, and that the respondent must be held as a matter of law to have assumed the risk where he knew the defects and where there was no promise to repair. The complaint alleged as one cause of negligence defective machinery and a promise to repair; but it also alleged negligence by reason of failure to furnish "safe, suitable, and proper machinery and appliances." It is, no doubt, the law that, if the respondent knew of the danger from the machine, or if the danger was so open and apparent that he should have appreciated it, he assumed the risk. The respondent testified that he knew of the defects, but he denied knowledge of the danger. In the case of *Pearson v. Federal Min. etc. Co.*, 42 Wash. 90, 84 Pac. 632, we said:

"The general rule is that, if the servant knows the danger, or if it is so patent that an ordinarily prudent person would see and appreciate it, and he continues in the master's service, he assumes the obvious risk; but if the defects in the machinery or appliances grow out of the want of ordinary care on the part of the master and are not so serious but the appliances may be safely used with care and prudence, the master is liable where an injury occurs when the injured servant uses the appliances with care."

To the same effect, see, also, *Bailey v. Mukilteo Lumber Co.*, 44 Wash. 581, 87 Pac. 819; *Goldthorpe v. Clark-Nickerson Lumber Co.*, 31 Wash. 467, 71 Pac. 1091; *Shoemaker v. Bryant Lumber & Shingle Mfg. Co.*, 27 Wash. 637, 68 Pac. 380.

The record shows, that the respondent was not experienced with this kind of a machine; that at the time he was requested to operate it he knew nothing about it, and was instructed how to start and run it by his foreman; that he afterwards started it, upon the occasion of his injury, as he had been instructed. He had operated the machine for five or six weeks and no accident of any kind had occurred before. The evidence does not show that the respondent spilled the oil upon the machine or upon the ground, or that he knew the oil was spilled, or that there was oil near which was liable to become ignited by the electric spark. There is some evidence to the effect that the foreman in attempting to repair or adjust the machine during the day had spilled the oil, and that the respondent did not know and was not informed of that fact until after the explosion. Labatt, in his work on Master & Servant, Vol. 1, page 1045, says:

"In many instances where the injured servant had had no experience, or virtually none, in dealing with conditions similar to those which he was required to encounter, it is deemed unwarrantable to take the case from the jury or override a verdict in his favor, although it may be certain that the risk to which the injury was traceable was one which he would have been conclusively presumed to appreciate, if he had been

engaged for a longer time in discharging similar duties under similar circumstances, either for defendant or for some other employer."

Under the facts as they appear in this case, we think it cannot be said, as a matter of law, that the respondent knew or should have known of the danger of starting the machine as he did. The question of assumed risk was therefore for the jury. We are also of the opinion that the question of contributory negligence was for the jury, and that the defective condition of the machinery was the proximate cause of the injury. We think it is not necessary to discuss these points further.

There is no error in the record, and the judgment must therefore be affirmed.

DUNBAR, FULLERTON, and RUDKIN, JJ., concur.

HADLEY, C. J., and CROW, J., took no part.